24-2196-cv
Santos v. Kimmel

# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Argued: March 24, 2025      Decided: September 15, 2025)

Docket No. 24-2196-cv
_____

GEORGE SANTOS,

*Plaintiff-Appellant*,

v.

JAMES C. KIMMEL, AKA JIMMY KIMMEL, AMERICAN BROADCASTING
COMPANIES, INC., THE WALT DISNEY COMPANY,

*Defendants-Appellees*.
_____

Before:

    CABRANES, LOHIER, and SULLIVAN, *Circuit Judges*.


    Former Congressman George Santos sued late-night show host Jimmy
Kimmel and the companies that own and broadcast Kimmel's show, Jimmy
Kimmel Live!, for copyright infringement and state law breach of contract and
fraudulent inducement.  The suit arose after Kimmel, using various fictitious
names, submitted requests to Santos for personalized videos through the Cameo
platform.  Santos fulfilled each request, and Kimmel then aired some of the
videos on his show as part of a series of segments titled "Will Santos Say It?"
The District Court dismissed the complaint for failure to state a claim, holding
that the copyright claims were barred by the fair use doctrine and that the state
law claims either were preempted by the Copyright Act or failed to state a claim.

Because we agree that Santos's copyright claims were barred by the fair use doctrine and further conclude that each of Santos's state law claims failed to state a claim, we **AFFIRM**.

> ROBERT M. FANTONE, Mancilla & Fantone, LLP, New York, NY (Andrew Mancilla, Mancilla & Fantone, LLP, New York, NY, Joseph W. Murray, Great Neck, NY, *on the brief*), *for Plaintiff-Appellant*.
>
> NATHAN SIEGEL, Davis Wright Tremaine LLP, Washington, DC (Eric J. Feder, Davis Wright Tremaine LLP, Washington, DC, Raphael Holoszyc-Pimentel, Davis Wright Tremaine LLP, New York, NY, *on the brief*), *for Defendants-Appellees*.

LOHIER, *Circuit Judge*:

Former Congressman George Santos appeals from a final judgment of the United States District Court for the Southern District of New York (Cote, *J.*) dismissing his copyright infringement and state law claims against Jimmy Kimmel, American Broadcasting Companies, Inc. ("ABC"), which airs Kimmel's late-night show Jimmy Kimmel Live! ("JKL"), and ABC's parent company, The Walt Disney Company.  Santos's suit arose after Kimmel, using various fictitious names, submitted requests to Santos for personalized videos through the Cameo platform.  Santos fulfilled each request, and Kimmel then aired the videos on JKL as part of a mocking series of segments titled "Will Santos Say It?"  The District Court dismissed the complaint for failure to state a claim under Rule 12(b)(6) of

2

the Federal Rules of Civil Procedure, concluding that the copyright claims were

barred by the fair use doctrine and that Santos's state law claims either were

preempted by the Copyright Act or failed to state a claim.  Because we agree that

Santos's copyright claims were barred by the fair use doctrine and further

conclude that each of Santos's state law claims failed to state a claim, we affirm.

## DISCUSSION

We review *de novo* the District Court's dismissal of Santos's complaint

under Rule 12(b)(6).  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir.

2010).  We consider "the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the

complaint."  *Id.* at 111.  In doing so, we may also take judicial notice of

"copyright registrations[] as published in the Copyright Office's registry."  *Island*

*Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005);

*see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).

## I.     Copyright Infringement and Fair Use

In a copyright action, the affirmative defense of fair use "excuses what

might otherwise be considered infringing behavior, allowing courts to avoid

rigid application of the Copyright Act when it would stifle the very creativity the

3

Act is meant to promote." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th

163, 179 (2d Cir. 2024) (quotation marks omitted). Under the Copyright Act, we

consider the following non-exclusive factors in determining whether fair use has

been established: "(1) the purpose and character of the use . . . ; (2) the nature of

the copyrighted work; (3) the amount and substantiality of the portion used . . . ;

and (4) the effect of the use upon the potential market for or value of the

copyrighted work." 17 U.S.C. § 107.

In assessing the "purpose and character of the use" factor, we "focus[]

chiefly on the degree to which the use is transformative, *i.e.*, whether the new

work merely supersedes the objects of the original creation, or instead adds

something new, with a further purpose or different character." *Andy Warhol

Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021) (quotation

marks omitted). Our focus reflects an understanding that "fair use is a flexible

concept, whose application varies depending on the context." *Hachette Book Grp.*,

115 F.4th at 179 (quotation marks omitted). It may be "so clearly established by a

complaint as to support dismissal of a copyright infringement claim" at the

pleading stage. *TCA Television Corp.*, 839 F.3d at 178.

4

Addressing the "purpose and character of the use" factor, Santos

maintains that the use was not transformative because Kimmel "instigated the

creation of the original Works" and accordingly is the "designer[]" of their

original purpose.  Appellant's Br. 11.  Santos does not dispute the District Court's

finding that the purpose of the allegedly infringing use was "to comment on the

willingness of Santos . . . to say absurd things for money."  App'x 235.  He argues

instead that this was also *his* original purpose in making the videos.  But whether

a secondary use is transformative turns on what a reasonable observer thinks,

not the subjective intent of the copyright holder or that of the secondary user.

*See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544 (2023)

("[T]he subjective intent of the user (or the subjective interpretation of a court)

[does not] determine the purpose of the use.").  As Santos's original allegation

acknowledges, a reasonable observer here would think the videos conveyed

"feelings of hope, strength, perseverance, encouragement, and positivity," not a

willingness to say absurd things for money.  App'x 15.

Santos also contends that Kimmel's false representations demonstrate bad

faith and thus nullify the fair use defense.  *See Harper & Row Publishers, Inc. v.*

*Nation Enters.*, 471 U.S. 539, 562–63 (1985).  We disagree.  It is true that "[f]air use

5

presupposes good faith and fair dealing." *Id.* at 562 (quotation marks omitted).

But Santos's complaint contradicts any claim of a purpose on the Defendants'

part to "supplant" Santos's "commercially valuable right" in the videos. *Swatch*

*Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (quotation

marks omitted).  To the contrary, the complaint paints a portrait of defendants

motivated by (sarcastic) criticism and commentary. *See Authors Guild v. Google,*

*Inc.*, 804 F.3d 202, 215–16 (2d Cir. 2015).  We thus agree with the District Court

that the first factor strongly supports a finding of fair use.

We are equally unpersuaded by Santos's challenges to the District Court's

analysis of the remaining factors.  Among other things, the relevant copyright

registrations establish that the videos were published on the same day they were

created. *See* App'x 160–69; 17 U.S.C. § 101.  And it is clear on the face of Santos's

complaint that Santos has not suffered market harm within the meaning of the

fourth fair use factor because "[w]e ask not whether the second work would

*damage* the market for the first (by, for example, devaluing it through parody or

criticism), but whether it *usurps* the market for the first by offering a competing

substitute." *Hachette Book Grp.*, 115 F.4th at 189 (quotation marks omitted); *see*

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) ("[T]he unlikelihood

6

that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market.").

Because we need only consider "the original version of [the videos] and the [JKL segments] at issue" to decide "the question of fair use," *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (quotation marks omitted), we affirm the District Court's conclusion that fair use bars Santos's copyright claims even at the pleading stage.

## II.    State Law Claims

Santos also appeals the District Court's dismissal of his state law claims for breach of contract, breach of implied contract, and fraudulent inducement.  The District Court dismissed the first two state law claims on the ground that they were preempted by the Copyright Act.  Santos responds that those claims are "*qualitatively* different from a copyright infringement claim" and thus not preempted.  *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 302 (2d Cir. 2022) (quotation marks omitted).  We need not resolve this issue, however, because Santos's state law contract claims fail to state a claim for relief under state law.

We first address Santos's direct breach of contract claim under the Cameo

7

Terms of Service.  Santos is not party to the Terms of Service to which users (like

Kimmel) must agree and that Santos alleges were breached.  Under Illinois law,

which governs the Terms of Service, there is a "strong presumption against

conferring benefits to noncontracting third parties."  *Barry v. St. Mary's Hosp.*

*Decatur*, 68 N.E.3d 964, 976 (Ill. App. Ct. 2016).  Indeed, "the implication that the

contract applies to third parties must be so strong as to be practically an express

declaration."  *Id.* (quotation marks omitted).  Here, Santos identifies nothing

close to an "express declaration" that the relevant provisions of the Terms of

Service apply to him or other noncontracting parties.  Indeed, other provisions of

the Terms of Service *do* contain third-party beneficiary language, indicating that

when the parties to that agreement intended to allow provisions of the contract

to be enforced by third parties, they said so expressly.

We next address Santos's breach of implied contract claim.  Under New

York law, which governs this claim, we consider "the intent of the parties and

the surrounding circumstances" to determine "[w]hether an implied-in-fact

contract was formed and, if so, the extent of its terms."  *Rocky Point Props., Inc. v.*

*Sear-Brown Grp., Inc.*, 744 N.Y.S.2d 269, 271 (4th Dep't 2002) (quotation marks

omitted).  In this case, however, Santos's complaint does not "allege, in

8

nonconclusory language, . . . the essential terms of the parties' . . . contract, including those specific provisions of the contract upon which liability is predicated." *Caniglia v. Chi. Trib.-N.Y. News Syndicate, Inc.*, 612 N.Y.S.2d 146, 147 (1st Dep't 1994); *see* App'x 22 ¶¶ 78-79 (failing to plead the essential terms of the putative implied contract that the Defendants allegedly breached).  Nor does Santos plausibly allege that there was "an indication of a meeting of minds of the parties constituting an agreement" that Kimmel would adhere to the Terms of Service.  *DG & A Mgmt. Servs., LLC v. Secs. Indus. Ass'n Compliance & Legal Div.*, 859 N.Y.S.2d 305, 306 (3d Dep't 2008) (quotation marks omitted); *see also Tjoa v. Julia Butterfield Mem'l Hosp.*, 612 N.Y.S.2d 676, 677 (2d Dep't 1994).

Finally, Santos challenges the District Court's dismissal of his fraudulent inducement claim for failure to allege any out-of-pocket loss as required under New York law.  *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).  We agree with the District Court's conclusion that Santos failed to allege that he suffered any actual out-of-pocket loss as the victim of the alleged fraud.  *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142–43 (2017).  We therefore affirm the District Court's dismissal of that claim.

9

## CONCLUSION

We have considered Santos's remaining arguments and conclude that they

are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the

District Court.